**KEVIN S. MAAS,**

        **Plaintiff,**

v.                                                  Case No. 25-CV-446

**KIRA LABBY,** *et al.***,**

        **Defendants.**

## DECISION AND ORDER

Plaintiff Kevin S. Maas, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Maas was allowed to proceed on a claim against defendants Kira Labby, Angela Thompson, Daniel Cromwell, Daniel LaVoie, Francesca DeTrana, Laura Sukowaty, and Holly Gunderson pursuant to the Eighth Amendment for allegedly failing to properly treat Maas's chronic coughing and hypertension for over a year. The defendants filed a motion for partial summary judgment on the ground that Maas failed to exhaust his administrative remedies before filing this lawsuit. (ECF No. 10.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 17.) The motion is fully briefed and ready for a decision.

## PRELIMINARY MATTERS

In their motion for partial summary judgment the defendants frame the case by stating that Maas was allowed to proceed on two claims: 1) a claim "for improper treatment related to his chronic coughing and hypertension for over a year", and 2) a

claim that the defendants "ignored medical expert recommendations without any medical basis," specifically, the recommendations of outside specialists. (ECF No. 11 at 1.) In response, Mass argues that he was only allowed to proceed on one claim—that the defendants were deliberately indifferent to his chronic cough and hypertension. (ECF No. 19 at 4.) He states that certain defendants ignoring the advice of a specialist is one example of how the defendants ignored his serious medical needs for over a year. (*Id.*)

Maas is correct. In reviewing his complaint and the screening order entered by District Judge J. P. Stadtmueller, Maas was allowed to procced on one claim of deliberate indifference. Indeed, Judge Stadtmueller's screening order is quite explicit: "In light of the forgoing, the Court finds that the Plaintiff may proceed on the following claim pursuant to 28 U.S.C. §1915A(b): **Claim One:** Eighth Amendment claim against Labby, Thompson, Cromwell, LaVoie, DeTrana, Sukowaty, and Gunderson." (ECF No. 7 at 7.) No other claim is listed.

This is relevant because the defendants move for partial summary judgment on two grounds: 1) that Maas failed to exhaust his administrative remedies as to Gunderson, Sukowaty, and LaVoie because their treatment did not begin until after Maas filed an inmate complaint about the lack of treatment; and 2) that Maas failed to exhaust his administrative remedies as to the claim that the defendants did not follow the advice of the specialists. The defendants move for partial summary judgment, asking for Gunderson, Sukowaty, and LaVoie to be dismissed and for the second claim to be dismissed.

2

As to the first issue, the court discusses that in more detail below. However, the court denies summary judgment as to the motion to dismiss the second claim because it is clear there are not two claims.

Additionally, Maas argues that, pursuant to *Perttu v. Richards*, 605 U.S. 460 (2025), he is entitled to a jury trial on the question of exhaustion. (ECF No. 19 at 6.) *Perttu* states that plaintiffs are entitled to a jury trial on exhaustion under the Prison Litigation Reform Act (PLRA) "when that issue is intertwined with merits of a claim that falls under the Seventh Amendment." *Id.* at 468-496. Here, the merits of Maas's claim are not so intertwined with the issue of exhaustion. The question of whether Maas properly exhausted his administrative remedies is not dependent on resolving the issue of whether the defendants were deliberately indifferent to Maas's serious medical needs. As such, *Perttu* does not applyhere.

**Summary Judgment Standard**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## Exhaustion of Administrative Remedies

The PLRA states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in

4

federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The Inmate Complaint Review System (ICRS) is the main process a prisoner must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. Before filing a formal written inmate complaint, "an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint." Wis. Admin Code § DOC 301.07(1). An inmate must file a formal written inmate complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about and must be limited to one issue at a time. Wis. Admin. Code § DOC 310.07(5).

Once an inmate files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be rejected for any of the nine reasons stated in Wis. Admin. Code § DOC 310.10(6)(a)-(i). An inmate may appeal a rejected complaint to the appropriate reviewing authority within 10 days. Wis. Admin. Code § DOC 310.10(10). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, including if the inmate complaint contains more than one issue. Wis. Admin. Code § DOC 310.10(5). An inmate has 10 days to correct the deficiencies. Wis. Admin. Code § DOC 310.10(5).

Once the ICE accepts the complaint, the ICE makes a recommendation to the reviewing authority. Wis. Admin. Code § DOC 310.10(12). The reviewing authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the corrections complaint examiner. Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e). Appeals must also be "limited to the issue raised in the original complaint." Wis. Admin. Code § DOC 310.09(2)(g). If a prisoner does not receive a decision within 45 days after the date the ICE acknowledged the inmate complaint, he may appeal to the Corrections Complaint Examiner. Wis. Admin. Code § DOC 310.11(3). The Corrections Complaint Examiner then has 45 days in which to make a recommendation to the Office of the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The Corrections Complaint Examiner "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days in which to make a decision following receipt of the Corrections Complaint Examiner's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the Corrections Complaint Examiner's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

*Maas's Allegations and Attempts to Exhaust his Administrative Remedies*

In 2010 Maas developed a chronic cough wherein he often had to clear his throat. (ECF No. 1 at 2.) Eventually he was diagnosed with Gastro-Esophageal-Reflux-Disease (GERD). (*Id.*) In 2015, while incarcerated at Jackson Correctional Institution, he was put on a 30-day trial of Clonazepam for his issues, which greatly improved his condition. (*Id.*) The doctor at Jackson then put in a request for Maas to be put on Clonazepam long-term, which was approved. (*Id.* at 4.)

Maas transferred to Redgranite Correctional Institution (RGCI) on August 13, 2021. On August 31, 2021, he was first treated by defendant Dr. Labby. (ECF No. 1 at 4.) Initially, Dr. Labby continued Maas's prescription for Clonazepam. (*Id.*)

On December 1, 2021, Maas was taken to the emergency room for chest pains and extremely high blood pressure. (ECF No. 1 at 4.) He saw Dr. Labby for a follow-up on December 3, 2021, and Maas asserts that at this appointment Dr. Labby arbitrarily decided to discontinue Maas's Clonazepam prescription. (*Id.*)

In February 2022 Maas contacted defendant Thompson about Dr. Labby's discontinuation of Clonazepam, but Thompson never responded. (ECF No. 1 at 5.) It became clear that Maas's cough was getting worse, so Dr. Labby consulted with defendant Dr. DeTrana, who noted that Maas "must be tapered off of Benzo, he knew that." (*Id.*) Maas asserts that, once he was taken off the Clonazepam, his condition worsened, and despite several attempts to get care the defendants did nothing to treat him. (*Id.*) At some point at the end of March Maas sent a letter to the Wisconsin Department of Corrections Bureau of Health Services stating that he had been taken

7

off of Clonazepam and asked for help. (*Id.* at 6.) Defendant Gunderson responded, stating that she could not address his concerns because there was a pending investigation into his inmate complaint. (*Id.*)

Finally on October 20, 2022, Maas had a consult with an outside specialist, non-defendant Dr. Jessica Baker at UW-Madison Hospital. (ECF No. 1 at 7.) Dr. Baker not only stated that Maas should go back on Clonazepam but also recommended Gabapentin. (*Id.*) Maas alleges that defendants Sukowaty and LaVoie decided not to follow Dr. Baker's recommendation. (*Id.*) Then, on December 30, 2022, Maas was examined by non-defendant Dr. Monica Zablotuey, who performed several diagnostic tests. (*Id.*) She also ordered more tests, and recommended that, while Maas was awaiting those results, he be prescribed Gabapentin for relief. (*Id.*) Again, Sukowaty and LaVoie, along with Dr. Labby, decided not to follow the recommendation. (*Id.*)

The defendants identified five potentially relevant complaints, but it is undisputed that, because Maas failed to appeal the rejection of four of the five complaints, the only relevant inmate complaint is RGCI-2022-4363.

The ICE received RCGI-2022-4363 on March 14, 2022. (ECF No. 13-4 at 10.) In the inmate complaint Maas stated, "A long term treatment medication (Clonazepam) was discontinued." (*Id.*) He noted that he had been on this medication for years, and then in December Dr. Labby "without any medical rational" discontinued the prescription." (*Id.*) As a result, he stated his condition was worsening. (*Id.*) He requested that either he be put back on Clonazepam or given an "equally functional option of treatment." (*Id.*) He also stated that he contacted Thompson and never received a

8

response. (*Id.*) The ICE recommended dismissal because the decision was based on Dr. Labby's professional judgment. (*Id.* at 2.) It is undisputed that Maas fully appealed the decision, and that ultimately the Office of the Secretary upheld the dismissal. (*Id.* at 6.)

*Analysis*

The defendants argue that, because Gunderson, Sukowaty, and LaVoie treated Maas after he filed the inmate complaint on March 14, 2022, he did not exhaust his administrative remedies against them and they should be dismissed. Maas argues that, because the institution was already on notice that they were not treating his chronic health issues, he did not have to file additional inmate complaints pursuant to the continuing violations doctrine.

The Seventh Circuit Court of Appeals has held that, "[i]n order to exhaust their administrative remedies, prisoners need not file multiple, successive grievances raising the same issue . . . if the objectional condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). "Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id.* The crux of Maas's claim is that the defendants discontinued his Clonazepam and failed to otherwise treat his chronic cough and hypertension. He explicitly states this issue in his inmate complaint. Thus, the "prison has received notice of, and an opportunity to correct a problem", so Maas "has satisfied the purpose of the exhaustion requirement." *Id.*

Because his claim and the inmate complaint include allegations that the defendants failed to provide an alternative to Clonazepam, the inmate complaint also covers the defendants' failure to follow the recommendations of the outside specialists.

9

In short, the institution was put on notice back in March 2022 that Maas was taken off Clonazepam and was not being provided an alternative treatment, but the defendants still continued, for months after, to ignore and/or fail to treat Maas's chronic cough and hypertension, to Maas's detriment. This is a prime example of a continuing violation. The institution and the defendants had the power to remedy the plaintiff's condition but failed to do so. *Wilson v. Wexford Health Services*, 932 F.3d 513, 517 (7th Cir. 2019). The defendants' motion for partial summary judgment on exhaustion grounds is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment (ECF No. 10) is **DENIED.** The court will issue a scheduling order at a later date.

Dated at Milwaukee, Wisconsin this 8th day of December, 2025.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge